Pfeifer, J.,
concurring.
{¶ 47} I concur in the judgment in this case, but cannot join the majority opinion, because it flatly contradicts the case it purports to follow and explain, Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145. The majority’s effective overruling of Nickell occurs in regard to the first element of the Nickell test, an element that is not even in dispute in this case.
{¶ 48} In Nickell, this court stated:
{¶ 49} “The tort of lack of informed consent is established when:
{¶ 50} “(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
{¶ 51} “(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
*31 {¶ 52} “(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.” Nickell, 17 Ohio St.3d at 139, 17 OBR 281, 477 N.E.2d 1145.
{¶ 53} The majority contradicts Nickell in regard to the first element of the test by holding that expert testimony is necessary to establish which risks of the procedure were material. This court held completely the opposite in Nickell. Here is the law as clearly set forth in Nickell:
{¶ 54} “One of our dilemmas in applying [the lack-of-informed-consent] test is the question of how far a doctor must go in establishing whether a potential danger, albeit improbably remote, is sufficiently material to require disclosure. To this end the reasonable patient standard is utilized. See Note, Informed Consent — A Proposed Standard for Medical Disclosure (1973), 48 N.Y.U.L.Rev. 548, 552-555. See, also, Prosser & Keeton, Torts (5 Ed.1984) 189-192. In the instant case the jury was properly instructed that ‘ * * * a risk is material when a reasonable person, in what the physician knows or should know to be the patient’s condition, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed treatment.’ ” Id.
{¶ 55} Thus, in Nickell, the court held that a trier of fact should employ a reasonable-patient standard in determining whether a risk is material — that is, whether a reasonable patient would attach significance to the risk in making a decision about whether to pursue treatment. A lack-of-informed-consent case is all about what a reasonable patient would have done had he been properly informed by his doctor about the risks of a treatment the doctor undertakes. It is completely within a juror’s ken — without expert testimony — to know what a reasonable patient would want to hear from a doctor before undergoing treatment, what risks he would consider material. In other words, a juror is perfectly capable of determining what a reasonable patient would want to know. He can simply ask, “Would I want to know that?”
{¶ 56} And that has been the law in Ohio. In this case, however, the majority holds that “expert medical testimony is required to establish * * * the material risks and dangers inherently and potentially involved with a medical procedure.” Majority opinion at the syllabus. Again, this switch from established Ohio law comes in a case where materiality of the risk is not even an issue — the trial court directed a verdict in favor of the defendant because it held that the plaintiff had failed to present sufficient testimony to satisfy the second element of the Nickell test, that the undisclosed risk caused the injury at issue.
{¶ 57} In Nickell, by adopting the reasonable-patient standard in regard to the first element of the test, this court essentially held that a jury, after determining the risks of a procedure, must decide, without the necessity of expert testimony, *32 whether the undisclosed risk would have been a significant factor for a reasonable person to consider in making a decision on whether to go forward with the procedure.
{¶ 58} Granted, this court did not explain in Nickell how a jury learns of the risks associated with a procedure. And in the underlying trial in Nickell, there was indeed expert testimony on the established risks associated with the procedure in question. Nickell, 17 Ohio St.3d at 139, 17 OBR 281, 477 N.E.2d 1145. As numerous courts have held, although the materiality of a procedure’s risk is ultimately to be determined by applying a reasonable-patient standard, establishing what a procedure’s risks are does require expert testimony. As the court stated in Thibodeaux v. Jurgelsky (La.2005), 898 So.2d 299, 314, this makes a determination of the material risks of a procedure, i.e., materiality, a two-step process:
{¶ 59} “This court has explained:
{¶ 60} “ ‘The determination of materiality is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. “Some” expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type [of] harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient’s position probably would attach significance to the specific risk. This determination of materiality does not require expert testimony.’ Hondroulis v. Schuhmacher, on reh’g, 553 So.2d 398, 412 (La.1989).” See also Cleary v. Group Health Assn., Inc. (D.C.1997), 691 A.2d 148, 153-154; Miller-McGee v. Washington Hosp. Ctr. (D.C.2007), 920 A.2d 430, 440.
{¶ 61} Expert testimony narrows the “field of risks” that a jury may find to be material under the reasonable-patient standard. Marsingill v. O’Malley (Alaska 2002), 58 P.3d 495, 503-504. “Specifically, expert testimony is necessary to prove the existence of a risk, its likelihood of occurrence, and the type of harm in question. Once those facts are shown, expert testimony is unnecessary.” Smith v. Shannon (1983), 100 Wash.2d 26, 34, 666 P.2d 351.
{¶ 62} Thus, the first element of the tort of lack of informed consent as set forth in Nickell may require expert medical testimony to establish the risks and dangers inherently and potentially involved with the medical procedure. Whether those risks were material in a given case, however, is for the jury to determine, applying the reasonable-patient standard.
{¶ 63} The majority opinion requires expert testimony to establish both the risks of the procedure and whether the risk was material. Case after case cited *33 by the majority to support its position actually instead supports the widely held position that expert testimony is needed to establish the nature of the medical risks, but is not needed to establish whether a specific risk is material. See, e.g., Sard v. Hardy (1977), 281 Md. 432, 447, 379 A.2d 1014 (“We regard as more persuasive the reasoning of the cases that require neither the scope nor the breach of the physician’s duty to be established by expert medical testimony”); Crain v. Allison (D.C.1982), 443 A.2d 558, 563 (“expert testimony is not needed to establish the scope of or the breach of the duty to inform one’s patients before treating them”); Smith, 100 Wash.2d at 33, 666 P.2d 351 (“The determination of materiality is a 2-step process. Initially, the scientific nature of the risk must be ascertained, i.e., the nature of the harm which may result and the probability of its occurrence. * * * The trier of fact must then decide whether that probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment”); Canterbury v. Spence, 464 F.2d at 792 (“Experts are unnecessary to a showing of the materiality of a risk to a patient’s decision on treatment, or to the reasonably, expectable effect of risk disclosure on the decision”); Festa v. Greenberg (1986), 354 Pa.Super. 346, 355, 511 A.2d 1371 (“The question of whether a physician disclosed risks which a reasonable man would deem material is for the trier of fact”); Thibodeaux, 898 So.2d at 314 (“ ‘This determination of materiality does not require expert testimony’ ”); Marsingill, 58 P.3d at 503, quoting the two-step test quoted in Thibodeaux.
{¶ 64} It is appropriate to require expert testimony to establish the medical risks in a lack-of-informed-consent case. But risk assessment is different from the materiality assessment. A lack-of-informed-consent case is not purely a medical-malpractice case. The medical aspects of a lack-of-informed-consent case do require expert testimony, but whether a reasonable patient would have placed significance on the medical information a doctor allegedly failed to provide is a matter for the jury. A reasonable patient’s response to medical information is an integral part of both the first element (whether the risk was material) and third element (whether the patient would have refused the treatment had he or she been aware of the risk) of a Nickell claim.
{¶ 65} The majority, however, conflates the first and third elements of the Nickell test. It holds as to the first element of the Nickell test that “[ejxpert medical testimony is required to establish the material risks and dangers inherently and potentially involved with a medical procedure, but what a reasonable patient would have done in light of these disclosed risks is determined by the trier of fact.” (Emphasis added.) Majority opinion at ¶ 37. What a reasonable patient would have done had the risks been disclosed, i.e., whether he would have opted to undergo the procedure, is the third element of a lack-of-informed-consent case. The first element considers whether the undisclosed information would have been significant in the decision-making process.
*34 Cooper & Elliott, L.L.C., Charles H. Cooper Jr., and Rex H. Elliott, for appellees.
Reminger Co., L.P.A., Martin T. Galvin, Brian T. Gannon, and Brian D. Sullivan, for appellant.
Bonezzi, Switzer, Murphy, Polito & Hupp Co., L.P.A., Bret C. Perry, and Jennifer R. Becker, urging reversal on behalf of amicus curiae, the Academy of Medicine of Cleveland and Northern Ohio.
{¶ 66} The majority performs unnecessary surgery on Nickell. It stitches together contradictory case law in an avowed attempt to “fully explain the analysis that should accompany [the reasonable-patient standard’s] application,” majority opinion at ¶ 30, but instead guts Nickell’s reasonable-patient standard and creates something entirely different. Certainly, the majority means well. But so did Dr. Frankenstein.
{¶ 67} I do, however, concur in the judgment of the majority. The evidence in the record is, as the trial court held, insufficient to satisfy the second element of the Nickell test.